HIRAM PITTS *et al.*

*v.*

PHILANDER L. CABLE *et al.*

</div>

1. MORTGAGE — *what constitutes.* The mere execution of a deed absolute on its face, and a bond for the reconveyance of the premises, upon certain conditions, does not of itself stamp the transaction as a mortgage; and when in such case, the proof shows that the parties intended an absolute sale, with right to repurchase simply, such intention must govern.

2. USURY — *when paid — cannot be recovered back.* A party cannot recover back, either at law, or by bill in equity, usurious interest which he has paid.

3. CHANCERY PRACTICE — *pleadings must conform to relief asked.* When a complainant in chancery seeks a specific performance, his bill must be framed with that view.

4. PURCHASER — *bona fide — without notice of equity.* Where a party purchases, without notice of an outstanding equity in another, he is not affected by such equity.

APPEAL from the Circuit Court of Rock Island county; the Hon. IRA O. WILKINSON, Judge, presiding.

The facts in this case are fully stated in the opinion.

Mr. A. W. WEBSTER, for the appellants.

Mr. GEORGE W. PLEASANTS, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a bill in equity, filed by Hiram Pitts, Elias S. Gilbert and Daniel Phelps, in the Rock Island Circuit Court, against Philander L. Cable, Ransom R. Cable, and Stillman W. Wheelock, to redeem from a mortgage on certain real estate in Rock Island county. It appears, that complainants were indebted to Mitchell and Cable in a large sum of money, and that they were the owners of this and other property, and owed other debts. That, for the purpose of paying the same, other portions of the property were sold to other parties, and all of their debt was paid to Mitchell and Cable except $3,556. The bill alleges, that to secure this sum it was agreed that complainants should execute a mortgage on the property in controversy, and that to cover usury which entered into the transaction it was arranged that complainants should execute to Philander L. Cable, a warranty deed for the premises in controversy, which seems to have been done. And that he was to execute to them a bond for a reconveyance upon their paying him that sum with ten per cent per annum, from the first of the previous September, with all taxes, and ten per cent interest thereon, and any sum he might expend in fencing the premises in a cheap manner — the payments to be made by the 1st day of September, 1860. Also to convey any corner lot upon paying to him $200, or any other of the lots on the payment of $150 each. The bond was executed upon these terms, on the 19th of October, 1858. It also contained a provision, that if Cable should comply with the bond it should be void, and that it should be void after the first of September, 1860, and that Cable might sell the property without reference to the agreement, as he gave them no further time to buy the property or any part of it.

Cable, in his answer, denies that the transaction was intended to be a mortgage, or to secure a pre-existing debt. He insists that it was intended to be, and became, a valid purchase, with an agreement for a resale, in good faith. The answer was not under oath, as it had been waived by the bill. He admits that there was usury in the original debt, but denies that it was more than one-half as much as charged. He admits that the note was assigned to him by his firm after its maturity, but claims that the assignment was not made to conceal the usury and says "that in those days he had become so hardened in violating the usury laws of the State that he openly avowed his disregard of the provisions of the statute, in that case made and provided."

It appears that when the note held by Cable, against complainants, was paid, it was surrendered up, and no other was taken, nor was any obligation to pay the purchase money given by them. Pitts was in the occupancy of the land, and paid a portion of the taxes, and delivered to Cable some apples grown on the place, but no money was paid for the purchase or redemption of the lots within the limited time. After the first of September, 1860, it appears that Hiram Pitts occupied the premises until 1864, after which time Cable and Wheelock occupied them. On the 29th of April, 1864, Cable conveyed the premises to Bennett and wife, for the consideration expressed in the deed of $2,500, which was recorded before Cable's bond was placed on record. On the 5th of May following, Bennett and wife conveyed the premises to Ransom R. Cable, and he, in September of the same year, sold a portion of the premises to Wheelock.

On the question of the intention of the parties at the time this deed was made (and this whole controversy turns upon their intention), there seems to be some conflict in the evidence. But when we consider the testimony of Reed, it seems to be better supported by the circumstances and entitled to more weight than that of other witnesses. He had the most ample means of knowing their design in entering into the arrangement. He acted for complainants and others in negotiating

and arranging the details and in consummating the arrangement. He says, that he then understood that it was a sale and not a mortgage. That the property was taken as a payment of $3,556 of the debt and not as a security for that sum. He says that such was his understanding at the time and still was when he testified; that he got it from appellants. He says, that he learned from them during the summer previous that Cable would take lots in payment of the debt, and afterward understood from them that they had conveyed these lots on account of the debt. He testifies that they conveyed a large tract of land to White and others for the purpose of paying debts to a large amount, about eleven or twelve thousand dollars of which they owed Cable and Mitchell. That the sale was not sufficient to pay all of the debts, and they had to provide for the sum for which the conveyance was made to Cable, in some other mode. That out of the sale to White and others all of that debt was paid except this $3,556, which was satisfied by the conveyance of these lots. He states, that the bond came to be given from the fact that Hiram Pitts insisted that the property was worth a much larger sum than the sum for which it was sold, and Cable contended, that it was worth no more. It was finally arranged, that if it was worth more, appellants should have the benefit of the difference, and should have until the 1st of September, 1860, within which to repurchase by paying the consideration and taxes with ten per cent interest per annum and the cost of fencing it, or by paying the prices as specified to acquire the title to any lots embraced in the conveyance.

This evidence is clear and specific that it was intended as a sale, and not as a mortgage or security for a debt. And the fact that the note was given up and canceled after the other payments were made, and no other notes or obligations were taken by Cable, supports this view of the case. Had Cable retained the note after the other payments were made, that would have been a strong circumstance to establish the transaction a mortgage. But if such was the design, it is strange that Cable left the transaction in the position that there was no

mutuality. He had nothing by which he could have enforced payment of the balance had the property proved insufficient on a foreclosure, had this in fact been a mortgage. If the transaction on its face could be held a mortgage, still we think the evidence abundantly shows that it was not so intended by the parties. Reed was the attorney of appellants in negotiating and closing this sale, and of all others must be presumed to have known what was their intention in making the deed.

It is urged that the fact that Hiram Pitts continued in possession, and paid taxes, is evidence that the parties understood the transaction to be a mere security for the prior indebtedness. The character of that possession does not clearly appear. Appellees claim that he was but a tenant, and that this is evidenced by the payment of taxes and the delivery of a portion of the apples grown upon the premises. This evidence is too loose and inconclusive to overcome the clear and explicit testimony of Reed. Even if it appeared that he remained in possession, not as a tenant, but in continuance of his former occupancy, it would not be sufficient to have that effect. On the whole case we must hold, that this was a sale with a right to repurchase, and not a security.

This, then, disposes of the question of usury. The whole debt, usury as well as the principal, having been paid, appellants cannot now recover it back either at law or by a bill in equity. Nor can they insist, under this bill, upon a specific performance, as the bill is not framed with that view. But if it were, it seems from the evidence that Bennett purchased in good faith, for a valuable consideration, and without notice. So that in any view we can take of the case, as it is now presented, we can perceive no grounds for granting the relief sought, and the decree of the court below must be affirmed.

*Decree affirmed.*