## Frederick W. Daniels v. Sidney Johnson and another.

*Legal effect of a conveyance with agreement to reconvey.* Where the owner in fee of certain land for a valuable consideration conveyed the same by a deed absolute in terms, and received back from the purchaser a written instrument to the effect that he would reconvey the premises at the expiration of one year, at a price fixed at a sum equal to an advance of ten per cent. on his purchase price:—

*Held,* That it was an absolute sale with an agreement to sell back within one year on payment of an increased price.

*Heard April 4. Decided April 10.*

Appeal in Chancery from Kalamazoo Circuit.

The bill in this cause was filed by Frederick W. Daniels against Sidney Johnson and Washington Pitcher, for the purpose of having a deed with a contract to reconvey declared to be a mortgage. The case was heard on pleadings and proofs. A decree was rendered in favor of defendants, from which the complainant appealed.

*H. H. Riley* and *John B. Shipman,* for complainant.

*James H. Lyon* and *H. F. Severens,* for defendants.

COOLEY, J.

The bill in this cause was filed for the purpose of having a deed from complainant to defendant Johnson decreed to be a mortgage, and for leave to complainant to redeem from the same. The undisputed facts are, that on the second day of February, 1852, the complainant was the owner of a certain quarter-section of land in St. Joseph county; that he was desirous of going to California, and in order to raise money for that purpose, conveyed the land to Johnson, by a deed absolute in its terms, receiving from him therefor the sum of eleven hundred dollars; that on receiving this deed, Johnson gave to complainant a written agreement, of which the following is a copy:

" State of Michigan, St. Joseph County, ss.—

" Whereas, Frederick W. Daniels has this day sold and conveyed to me, by deed of warranty, the southeast one-quarter of section thirty-two, in township six south, of range eleven west, being in the town of Lockport, in said county; and whereas, the said Daniels has this day made a proposal to purchase said land of me at the expiration of one year from this date, for the sum of one thousand two hundred and ten dollars, he allowing me to have what crops I may then have in the ground growing in said land, by my paying him the ordinary rent for the land thus occupied by crops, from that time till the said crops are harvested and secured, which proposition I have accepted.

" Now, therefore, in consideration of the premises and conditions mentioned, I, the said undersigned Sidney Johnson, do hereby agree and promise the said Frederick W. Daniels, that on his paying to me, at the expiration of one year from this date, the said sum of twelve hundred and ten dollars, I will convey to him, by a good and sufficient deed of warranty, the lands above described; he at the same time allowing me the privilege of having the growing crops on the terms specified in the foregoing proposal of said Daniels, which is the consideration of this agreement in connection with my recent purchase from him.

" Given under my hand this 2d day of February, A. D. 1852.

(Signed)    " SIDNEY JOHNSON.    [SEAL.]

" In the presence of

" JOHN STEARS."

That after giving the deed and receiving this agreement, complainant went to California, having first transferred the agreement to one Pitcher, probably by way of security for a small debt owing to him; that within the year, complainant, in California, made an arrangement

DANIELS *v.* JOHNSON.

with one Peek, who was about to come from there to
Michigan, that he should call upon Pitcher, get the agree-
ment, and pay Johnson the sum specified therein, taking
a conveyance of the land to himself as security for the
refunding to him of the moneys he should pay; that Peek,
according to his testimony, did call on Pitcher for the
purpose, but found he had given up the contract to John-
son, and was told it was too late to do any thing about it;
that he then called on Johnson, who confirmed this state-
ment of Pitcher, whereupon he gave the matter no further
attention. It further appears that complainant returned from
California in 1857, and filed this bill in 1864. The theory
of his case is, that he borrowed of Johnson eleven hundred
dollars, agreeing to repay the same in one year with ten
per cent. interest; that the deed was given to secure the
repayment, and the written contract was taken back by
way of defeasance, the sum specified therein being the eleven
hundred dollars, with the addition of one year's interest at
ten per cent., and the two papers taken together being
designed to operate by way of mortgage. The theory of
the defense, on the other hand, is that Johnson made a
purchase of the land of complainant for the sum of
eleven hundred dollars, but that complainant, thinking
this a low price for the same, and being anxious to
recover the land if possible on his return, induced Johnson
to give him the [privilege of repurchasing the land at the
end of a year, at the same price he had paid, with the
addition of interest at ten per cent., and that the written
agreement was given to ensure to him that privilege. And
the question for our decision is, whether here was a loan
with security for its repayment with interest, or a sale with
permission to repurchase at a specified price and in a spec-
ified time, which had elapsed long before the filing of the
bill.

If the complainant had established, by evidence, his theory of the case, there would be no doubt of his right to redeem. But in making out that case, he starts with such presumptions against him as spring from the fact that the papers, as drawn, give no indication that a loan rather than a purchase by Johnson was intended. The legal effect of the papers, independent of any extrinsic evidence, is to make Johnson the owner of an absolute fee, and to give complainant only a right to repurchase, of which he has not seen fit to avail himself. Johnson may consequently rely upon these papers as a complete defense, until such a showing is made by other evidence as will overcome the *prima facie* case they make out in his favor.—*Pitts v. Cable, 44 Ill., 103.*

Complainant claims to have made this showing by his own evidence of the circumstances attending the original transaction, supported in a measure by that of some other witnesses to the same facts, and by proof that the value of the land at the time was considerably in excess of the sum he received from Johnson. We are compelled to say, however, that the disparity between the actual value, as proved, and the sum received, was not so great as to constitute very convincing proof that a man anxious to sell would not have accepted such sum as the best price he was likely to obtain on a speedy sale. The evidence does not convince us that the fair value of the land at the time was more than from one thousand two hundred dollars to one thousand six hundred dollars; and between the average of the estimates to which the witnesses testify, and the sum paid by Johnson, the difference is probably not greater than the deduction from their own valuation which owners of lands similarly situated, would under ordinary circumstances be obliged to submit to, if they should put them upon the market for an immediate cash sale. Money is not usually

loaned upon real estate with a margin of value so little above the sum secured; and we have some evidence that complainant's own estimate was not very much higher, in the fact that by his arrangement with Peek, according to the testimony of the latter, the title was to be vested in him, and the land to become his absolutely, unless within two years he was repaid what he must advance to get the title from Johnson. If he was willing to make this arrangement with Peek, it is not unlikely he understood the one already made with Johnson to be similar; and if he thought the value of the land greatly in excess of the sum received from Johnson, it is hardly probable he would have made this proposal to Peek, instead of a pledge of the land as security.

And we think the great preponderance of the evidence, bearing more directly upon the issue, is against the claim advanced by complainant. To pass over his long and suspicious delay in asserting his rights—a delay which looks very much like speculating upon the chances of an advance in value, and which actually continued until a large advance had taken place—we find the evidence of Johnson, that the transaction was a *bona fide* purchase, very much better supported than that of complainant, who insists that its real nature was a loan. And when to the testimony of the other witnesses is added that of Judge Upson, who drew the written agreement, and who testifies most postively and clearly that he inquired of the parties particularly whether an absolute sale to Johnson had been made or a conveyance by way of security, and was told it was an absolute sale, and the agreement they wanted was one giving permission to repurchase, we can have no reasonable doubt that such was the real nature of the transaction between these parties, and that the papers as drawn express the actual contract.

This being our conclusion, we think the decree of the circuit court in chancery should be affirmed, with costs.

The other Justices concurred.