EMMA J. JEFFERY

*v.*

BURR ROBBINS *et al.*

167   375
172   240

167      375
190    ²588

167      375
111a   ⁴408

*Filed at Ottawa April 3, 1897—Rehearing denied October 8, 1897.*

1. VARIANCE—*to entitle the complainant to recover, the allegations and proof must agree.* A complainant cannot state one case in his bill and recover upon another case made by his proof.

2. ESTOPPEL—*when party is estopped to deny execution and binding force of contract.* One executing a written instrument, in which he expressly refers to the existence and terms of a certain contract which he therein claims to have executed, is estopped to deny the

execution and binding force of such contract or his knowledge of its existence.

3. CONVEYANCES—*whether a deed shall be construed as a mortgage depends on intention and circumstances.* Whether a deed, executed with an agreement to re-convey, shall be construed as a sale or a mortgage depends upon the intention of the parties and the facts and circumstances attending the execution of the instruments.

4. SAME—*deed is usually construed as a mortgage when evidence leaves matter in doubt.* Where there is a conveyance by deed and a contract for re-sale, and the evidence leaves it in doubt whether the transfer was intended as a mortgage or a conditional sale, the conveyance will usually be construed as a mortgage.

5. EVIDENCE—*written instrument introduced in evidence must be considered as a whole.* A written instrument executed by a party to a suit, which is introduced in evidence by his opponent as an admission to prove the execution of a contract therein mentioned, must be accepted, not only as proof of the execution of the contract, but of the purpose of its execution as therein described.

6. COURTS—*interlocutory decrees may be altered or vacated at any time before final decree.* Until a final decree has been rendered all interlocutory orders and decrees are before the court for review, and may be altered, modified or vacated as circumstances require.

*Jeffery* v. *Robbins*, 62 Ill. App. 190, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

JOHN J. McCLELLAN, and CAMPBELL ALLISON, for appellant:

Every deed conveying real estate which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. Starr & Curtis' Stat. chap. 95, sec. 12; Jones on Mortgages, secs. 267, 273, 279, 329, 330; *Miller* v. *Thompson*, 14 Ill. 428; *Bishop* v. *Williams*, 18 id. 101; *Sutphen* v. *Cushman*, 35 id. 197; *Bearss* v. *Ford*, 108 id. 16; *Preschbaker* v. *Feaman*, 32 id. 475; *Heald* v. *Wright*, 75 id. 17; *Ewart* v. *Walling*, 42 id. 453; *Jackson* v. *Lynch*, 129 id. 72; *Smith* v. *Doyle*, 46 id. 453; *Clark* v. *Finlon*, 90 id. 245; *Workman* v. *Greeting*, 115 id. 477; *Whittemore* v.

*Fisher*, 132 id. 243; *Bailey* v. *Bailey*, 115 id. 551; *Darst* v. *Murphy*, 119 id. 345.

In doubtful cases the court is inclined to construe the deed to be a mortgage, rather than an absolute conveyance. *Russell* v. *Southard*, 12 How. 139; *Bright* v. *Wagle*, 33 Ky. 252; Story's Eq. Jur. sec. 1018; *Klein* v. *McNamara*, 54 Miss. 90; 4 Wait's Actions and Defenses, 515.

The finding on a question of fact by the court which heard the witnesses testify will not be reversed by a court of review unless there is an entire absence of evidence to sustain it. *Brown* v. *Stewart*, 159 Ill. 212; *Green* v. *Hedenberg*, 54 Ill. App. 650; *Johnson* v. *Johnson*, 125 Ill. 514; *Whitcomb* v. *Duell*, 54 Ill. App. 650.

FLOWER, SMITH & MUSGRAVE, for appellees:

Plaintiff cannot allege one cause of action and recover on proof of another. *Trunkey* v. *Hedstrom*, 131 Ill. 304.

A complainant cannot be permitted to state his case one way in his bill and make another and different case by his testimony. *Purdy* v. *Hall*, 134 Ill. 198; *Morrison* v *Smith*, 130 id. 304; *Coale* v. *Moline Plow Co.* 134 id. 350.

Until final decree all previously rendered decretal orders are before the court for review, and may be altered, modified or vacated, as justice may require. *Show* v. *Patterson*, 2 Tenn. Ch. 174; *Hawkins* v. *Taber*, 47 Ill. 459; *Quinn* v. *McMahon*, 40 Ill. App. 593; *Gibson* v. *Rees*, 50 Ill. 383; *Fournique* v. *Perkins*, 16 How. 82.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

This is a bill filed on March 14, 1892, by the appellant, Emma J. Jeffery, against Burr Robbins and others, appellees, for the purpose of having the quit-claim deed, hereinafter mentioned, decreed to be a mortgage, and praying for an accounting, and for permission to redeem, and for a decree against Burr Robbins, requiring him to execute to appellant a deed of the property conveyed to

him by said quit-claim deed. The appellee, Robbins, in his answer, denies that the quit-claim deed executed to him was executed as a security, or by way of mortgage, and claims that it was an absolute conveyance. After proofs taken and hearing had, the circuit court dismissed the bill for want of equity. Upon appeal to the Appellate Court, the decree of dismissal so entered by the circuit court has been affirmed. The present appeal is prosecuted from such judgment of affirmance entered by the Appellate Court.

The quit-claim deed, which the bill avers to be a mortgage, was executed by John B. Jeffery and Emma J. Jeffery, his wife, on the 30th day of June, 1888, and conveyed, in consideration of one dollar, to Burr Robbins all their right, title and interest in and to lots 7 and 8 in assessor's division of certain lots in block 139 of school section addition to Chicago. Said lots 7 and 8 appear to have been owned by Wallace L. DeWolf, Jonathan Clark and J. D. Jennings, who executed leases of the same for a period of ninety-nine years. By transfer from the original lessees, the appellant, Emma J. Jeffery, on said 30th day of June, 1888, was the owner of, or held the title to, such leasehold estates in said lots. On June 29, 1888, appellant made a lease or sub-lease to one Francis P. Owings for the unexpired portion of the terms of said leases, at an annual rental of $6200.00. For the first six months' rent Owings was to give his note for $3100.00 payable six months after date, and was to pay the ground rent, taxes, assessments, etc., and $1040.00 on the first days of April and October in each year, and to erect upon the premises a building at a cost not to exceed $85,000.00, to be completed by January 1, 1889. The interest in said lots, conveyed by appellant and her husband to Robbins by said quit-claim deed, was the leasehold interest thus specified.

The bill charges, that, on June 30, 1888, appellant owed for ground rent of the said lots, and for taxes due

thereon, and for taxes on other property belonging to her, and for attorney's fees due to her lawyer, the sum of $6225.38; that thereupon appellee, Robbins, agreed with her to advance to her the money to pay such ground rent, taxes and fees then due, and all rent that should become due for the five years following the 30th day of June, 1888, as ground rent of said lots, and all taxes thereon during the same period; that said Robbins also agreed, that, if said Owings should fail to erect said building on the lots, he would furnish the funds necessary to erect the same, or would erect the same himself; that the quit-claim deed hereinbefore referred to was executed to said Robbins to secure him for said advances so made by him amounting to $6225.38 as aforesaid; that said Robbins was to have a reasonable sum for his services; that said quit-claim deed was to be a conveyance by way of mortgage of her leasehold estate, and an assignment of the lease to Owings; that Robbins agreed to execute to appellant a statement in writing, setting forth the terms upon which the said leasehold estate was conveyed, and that the same was to be re-conveyed and the lease re-assigned to her upon payment to Robbins of all the money advanced by him under said agreement, with interest and a reasonable sum for his services, at any time within five years. The bill avers, that, at the time the quit-claim deed was executed, appellant delivered to Robbins the Owings lease and assigned to him the note for $3100.00 made by Owings. It further alleges, that Robbins advanced for ground rent, taxes and fees, said sum of $6225.38; that Robbins has collected upon the note given by Owings, and from rents under said lease, more than enough to reimburse himself said sum of $6225.38, and that he is indebted to complainant in the sum of about $2000.00.

The answer of the defendant alleges, that, on June 30, 1888, appellant's husband, John B. Jeffery, was indebted to Robbins in the sum of $17,813.63, and that on that

380 JEFFERY v. ROBBINS. [167 Ill.

day Robbins advanced to appellant the further sum of
·$6221.06; and that said quit-claim deed was executed to
appellee, Robbins, and the note of Owings for $3100.00
was delivered to him, and that Robbins agreed to give
appellant a contract to re-sell to her the leasehold estate
at any time within five years for the sum of $22,215.00.
The contention of appellee, Robbins, is, that the quit-
claim deed was executed to him in absolute payment of
an indebtedness due from said Jeffery to him of about
$17,800.00, and of advances, amounting to over $6000.00,
made by Robbins to pay what was due for ground rent,
taxes and fees; that the indebtedness due from Jeffery
to Robbins on June 30, 1888, and the advances so made
to pay off ground rent, taxes and fees, amounted alto-
gether to $22,215.00; and that Robbins thereupon exe-
cuted to the appellant a contract of re-sale, reciting the
conveyance of said premises by appellant to Robbins on
June 30, 1888, by the quit-claim deed aforesaid, and the
execution of the lease to Owings, and agreeing that Rob-
bins would re-convey to appellant said property at any
time within five years from said date upon payment to
him of said sum of $22,215.00, provided that, if, at any
time during said five years, any of the rent due from
Owings under the lease should remain unpaid for thirty
days after it became due, the right to re-purchase said
property should expire upon one month's written notice
of such default given by Robbins to appellant, and her
failure to make payment before expiration of said notice.

We are satisfied from an examination of the record,
that the contract between the parties was such as is set
up in the answer. On and prior to June 30, 1888, John B.
Jeffery was indebted to Robbins upon two notes executed
by him to Robbins, one for $15,700.00, and the other for
$1266.95. These notes were at that time secured by nine
hundred and seventy shares of stock in the Jeffery Print-
ing Company. On that day, June 30, 1888, Robbins, in
addition to the indebtedness represented by said notes,

advanced more than $6000.00 for the purposes above
stated. After giving all necessary credits, and figuring
interest, the amount of indebtedness then existing from
Jeffery and his wife to Robbins, was $22,215.00. On the
same day the quit-claim deed was executed to Robbins,
and Robbins executed back a contract, by which he agreed
to re-sell the property to Mrs. Jeffery upon her payment
of said sum of $22,215.00 at any time within five years,
subject to the right of Robbins to forfeit the privilege of
re-purchase by Mrs. Jeffery upon default in payment of
the rent under the Owings lease, and upon giving notice
as aforesaid.

Appellant in her bill claims, that the quit-claim deed
was executed merely for the purpose of securing the ad-
vances, amounting to something more than $6000.00, made
on June 30, 1888. She only offers to pay the advances so
made and seeks to redeem the property upon such pay-
ment. She denies, that Robbins executed to her a con-
tract to re-sell upon payment of $22,215.00 within five
years, and contends that, if Robbins did execute such a
contract of re-sale, she did not know of it, and did not
assent to it, nor accept its provisions. In view of the
documentary evidence introduced, we think, that she is
estopped from denying the execution of the contract of
re-sale as set up in the answer.

On May 25, 1889, appellant entered into a contract
with Wallace L. DeWolf, in which, after reciting the
leases aforesaid for the terms of ninety-nine years and
her ownership thereof, she makes this further recital,
to-wit: "Whereas, said Emma J. Jeffery, by an instru-
ment dated the 30th day of June, 1888, sold and assigned
all her right, title and interest in and to said lots seven
(7) and eight (8), to one Burr Robbins, of Chicago, who by
an instrument dated the 30th day of June, 1888, agreed
to re-convey to said Emma J. Jeffery the interest so ac-
quired by him in said sub-lots seven (7) and eight (8),
upon the payment by her, or her assigns, of the sum of

$22,215.00 at any time within five years from the date thereof." By said agreement of May 25, 1889, between herself and DeWolf, she also agrees, that she will assign the agreement dated June 30, 1888, executed by Burr Robbins, and all her rights thereunder, to DeWolf upon payment to her of $8000.00 within five days after an abstract of title shall have been furnished by her, showing that Burr Robbins had a good title to said leasehold estates; and therein DeWolf agreed to purchase her interest upon said terms. This contract of May 25, 1889, was signed by Emma J. Jeffery and Wallace L. DeWolf. Inasmuch as Mrs. Jeffery therein refers to the instrument of June 30, 1888, wherein Robbins agreed to re-convey to her the interest acquired by him through said quit-claim deed upon the payment by her of $22,215.00 at any time within five years, we think, that appellant is estopped from denying the execution of the contract of re-sale, and from denying her knowledge of it and its binding force upon her.

In addition to this, Mrs. Jeffery by John B. Jeffery, her husband, filed a petition in the circuit court of Cook county on the third day of June, 1889, wherein she makes the following statement: "Your petitioner further shows that John B. Jeffery, her husband, prior to the 30th day of June, 1888, had become indebted to Burr Robbins for borrowed money in the sum of $22,215.00, and as security for the payment of the said moneys to the said Robbins, your petitioner on the said 30th day of June, 1888, by an assignment in writing, bearing date on that day, assigned and conveyed to the said Burr Robbins all of her right, title and interest in the said lease executed by her, said petitioner, to the said Francis P. Owings, and the said Robbins at the time of the said conveyance and transfer to him of said lease, executed to your petitioner an instrument in writing, whereby the said Robbins promised to re-convey to your petitioner the said lease on the application of your petitioner, at any time within five years

from the assignment and conveyance thereof to him as aforesaid, on payment to him, or to his heirs, executors, administrators or assigns of the said sum of $22,215.00, provided," etc.; then follows the provision for a forfeiture of the right of re-purchase upon the terms and conditions already specified. In this petition appellant expressly refers to the contract of re-sale executed by Robbins to her, and also refers to the sum $22,215.00 as the amount of indebtedness due to Burr Robbins, and as the sum necessary to be paid in order to secure a re-purchase of the property. Besides the contract between appellant and DeWolf, and the petition filed in the circuit court, there is other testimony of a convincing character, which satisfies us that the contract to re-sell upon payment of $22,215.00 in the manner above stated, was executed as set up in the answer. We do not deem it necessary to go into any further or more extended examination of this evidence.

Whether the quit-claim deed executed on June 30, 1888, by appellant and her husband to Robbins, and the contract of re-sale for $22,215.00, executed by Robbins to appellant on the same day, together constituted a mortgage, or an absolute conveyance of the property to Robbins in payment of what was due to him, is a question which is not free from difficulty.

In *Pitts* v. *Cable*, 44 Ill. 103, it was held that the mere execution of a deed absolute on its face and a bond for the re-conveyance of the premises upon certain conditions, does not of itself stamp the transaction as a mortgage, and when in such case the proof shows that the parties intended an absolute sale with right to re-purchase simply, such intention must govern.

In *Hanford* v. *Blessing*, 80 Ill. 188, we held that contracts for re-purchase made contemporaneously with conveyances of real estate absolute in form, are sometimes strong evidence tending to show the conveyances are intended to be mortgages, but, where it appears the parties

really intended an absolute sale, and a contract allowing the vendor to re-purchase, such intention must control.

The question, whether a contract of re-sale and re-purchase is to be construed as a mortgage, depends on the intention of the parties at the time of the transfer. (*Rue* v. *Dole*, 107 Ill. 275; *Bearss* v. *Ford*, 108 id. 16; *Eames* v. *Hardin*, 111 id. 634; *Caprez* v. *Trover*, 96 id. 456; *Magnusson* v. *Johnson*, 73 id. 156). The evidence must be clear to overcome the presumption that the conveyance is other than what it purports to be. (*Lindauer* v. *Cummings*, 57 Ill. 195; *Keithley* v. *Wood*, 151 id. 566).

Where the evidence of indebtedness is surrendered, such surrender is strong proof that a mortgage is not intended. (*Pitts* v. *Cable, supra; Rue* v. *Dole, supra; Burton* v. *Perry*, 146 Ill. 71).

Here, when the quit-claim deed and the contract for re-sale were executed on June 30, 1888, Robbins surrendered the two notes, one for $15,700.00 and the other for $1266.95 which he held against Jeffery, and also surrendered at the same time the nine hundred and seventy shares of stock, which he held as collateral to secure the payment of those notes. Such surrender of the notes and stock would indicate, that the deed was intended to be in absolute payment of the indebtedness, and not as security for a continued indebtedness.

Whether or not a deed and an agreement to re-sell are to be regarded as an absolute sale or as a mortgage, depends upon the existing facts and circumstances, which led to their execution, and not upon the form the parties saw proper to give the transaction. (*Keithley* v. *Wood, supra*). There is another principle, however, which is not to be forgotten in this class of cases, and that is this: where there is a conveyance by deed and a contract for a re-sale, "and the evidence leaves it in doubt whether the transaction was intended as a conditional sale or a mortgage, it will, as a general rule, be treated as a mortgage." (*Keithley* v. *Wood, supra*).

We are unable to say, that the evidence does not leave it in doubt in the present case, whether or not the quit-claim deed and the contract for re-sale by Robbins to appellant amounted to a mortgage or an absolute sale. This doubt arises out of a portion of the evidence introduced by the appellee, Robbins. The petition filed in the circuit court by the appellant, through her husband as her agent, is introduced in evidence by the appellee. That petition recites upon its face, that the quit-claim deed was executed to Robbins as security for the payment of the sum of $22,215.00, being the amount of money borrowed by Jeffery from Robbins. While the surrender of the notes and of the stock is a strong circumstance, going to show that the deed was intended as an absolute sale and not as a security, yet the petition recites that the deed was given as a security for borrowed money. It is true, that the petition is introduced by appellee for the purpose of showing that there was a contract of re-sale for $22,215.00, but it must be accepted as proof, not only of the existence of the contract of re-sale, but also as proof of the fact, that such contract of re-sale and the quit-claim deed, executed at the same time with it, were together regarded as a security or mortgage. When the quit-claim deed was executed, there was not only an old indebtedness from Jeffery to Robbins, but a new indebtedness from Mrs. Jeffery to Robbins was then created by reason of the advances then made of more than $6000.00 to discharge accrued rent, taxes and fees. The case at bar would thus seem to come within the doctrine of the case of *Keithley* v. *Wood, supra.*

But the bill here does not proceed upon the theory, that the quit-claim deed and the contract for re-sale constituted a mortgage to secure $22,215.00 of borrowed money or indebtedness. It does not offer to pay the amount required in the contract of re-sale to be paid in order to secure a re-purchase by appellant. On the contrary, the appellant seeks to redeem the property upon

the theory, that the quit-claim deed was executed to secure certain advances amounting to about $6000.00, and denies, not only that such quit-claim deed was executed to secure the $22,215.00, but denies that any contract of re-sale, that was binding upon appellant, was executed at all. If appellant had filed her bill, recognizing the execution and validity of the contract for re-sale, and offering to pay the $22,215.00 and interest, a very different question would be presented for our consideration.

We do not think, however, that any contract was made between the parties by which the quit-claim deed can be regarded as a security for nothing more than the advances set up in appellant's bill. The *allegata* and *probata* must agree. A complainant cannot state one case in the bill, and recover upon another case made by the proof. Inasmuch, therefore, as the contract between the parties was the contract set up in the answer, and not the contract set up in the bill, the court below decided correctly in dismissing the bill, even though the quit-claim deed and the contract of re-sale for $22,215.00 be regarded as a mortgage rather than an absolute sale.

There is a further question in the case. After a hearing before one judge sitting as a chancellor in the Superior Court of Cook county, an order was entered on June 21, 1892, by the terms of which the court found, that the deed, dated June 30, 1888, was a mortgage to secure Burr Robbins for any money that he might thereafter advance or pay out for, or on account of complainant, and for any money he may have advanced or paid out on her account; and the court therein ordered, that inasmuch as it was not fully advised as to whether said deed did or did not secure any indebtedness of John B. Jeffery to Robbins, the question, whether said indebtedness from John B. Jeffery to Robbins was intended to be so secured, was expressly reserved from the decree until the coming in of the master's report; and the cause was referred to a master to take and report any other evidence that the

parties might offer on the question therein reserved.
Thereafter on July 12, 1892, the appellee, Robbins, filed
a petition for a rehearing, or that the court might so
modify the order of June 21, 1892, as to direct the master
to receive such new or further evidence, as the petitioner
might be able to produce upon the question of the nature
and purpose of the deed of June 30, 1888. Thereupon
"by agreement of counsel for the respective parties," it
was ordered, "that the parties plaintiff and defendant be
and are hereby authorized to introduce in evidence be-
fore the master any evidence relating to the matter set
forth in said petition; and the order or decree of June 21,
1892, is modified accordingly."

We regard the order of June 21, 1892, as being merely
interlocutory. Until final decree, all previously rendered
decretal orders are before the court for review, and may
be altered, modified or vacated as circumstances may
require. (*Hawkins* v. *Taber*, 47 Ill. 459; *Gibson* v. *Rees*, 50
id. 383). "When a chancellor becomes satisfied that he
has committed an error, he should avail himself of the
earliest opportunity to correct it, and not delay justice
by binding the party to his appeal or writ of error."
(*Gibson* v. *Rees, supra*).

Hence, we think that there was no error, notwith-
standing the order entered on June 21, 1892, in permitting
further evidence to be taken as to the purposes and ob-
jects of the quit-claim deed in question. The court had
a right to order and receive such further evidence, both
because of the interlocutory character of the order en-
tered on June 21, 1892, and because such further intro-
duction of evidence was by agreement of counsel.

Accordingly, the judgment of the Appellate Court
and the decree of the circuit court are affirmed.

*Judgment affirmed.*