# Harry F. Cooper, Appellant, v. Paul H. Cooper, Appellee.

## Gen. No. 5429.

1. MASTERS IN CHANCERY—*when order of reference may be modified.* An order of reference to a master is an interlocutory decree and subject to be modified or corrected, if erroneous at any time.

2. MASTERS IN CHANCERY—*when error in stating account preserved for review.* An assignment of error charging that there was error in not taking into account a certain item is properly preserved where the master's report is objected to and the objections filed to such report subsequently ordered to stand as exceptions.

3. CHANCERY—*what not part of record.* Remarks of a judge taken stenographically are not evidence and unless incorporated in a certificate of evidence signed by the judge who made such remarks are not part of a chancery record.

4. CHANCERY—*when certificate of evidence must be filed.* A certificate of evidence must be filed at the term at which the transaction occurs or at some later period provided for during such term.

Bill in equity.   Appeal from the Circuit Court of Kane county; the HON. MAZZINI SLUSSER, Judge, presiding.   Heard in this court at the April term, 1911.   Reversed and remanded with directions.   Opinion filed October 13, 1911.

**Statement by the Court.**   This is a bill in equity filed April 29, 1905, by Harry F. Cooper against Paul H. Cooper, his brother, seeking to have a deed made May 27, 1889, by Harry F. Cooper conveying a quarter section of land in South Dakota to Paul H. Cooper declared to be a mortgage and asking a decree for a reconveyance.   The bill alleges that the conveyance while

appearing to be a deed absolute was in fact a mortgage; that on August 11, 1893, there was an accounting and settlement between the parties and a balance found in favor of complainant, and it was then agreed that the title to said land should remain in the defendant and that on request of complainant defendant would convey the tile to whomsoever the complainant should direct, and that subsequently thereto the defendant had acknowledged the trust in writing; that in May 1904, complainant learned that defendant had in 1899 without the knowledge or consent of complainant conveyed said land to a purchaser, who had no notice of complainant's rights, and that complainant immediately upon learning of the sale demanded of defendant an accounting for rents and profits, and that defendant reconvey the land to complainant or pay the market value of the land.

The answer admits the conveyance made by complainant to defendant, but denies all the other allegations of the bill; states that complainant has no interest in the quarter section of land and no right to an accounting, pleads the Statute of Frauds and the ten years'· Statute of Limitations. A replication was filed and the cause referred to the master to take and report the evidence. The master reported the evidence taken, and the cause coming on to be heard before the court, Judge Bishop presiding, both parties offered additional evidence, when the cause was re-referred to the master for an accounting. Both parties filed exceptions to the report of the master. The court on the final hearing sustained some of the exceptions of both parties, overruled others and entered a decree in favor of complainant for $2343.87, from which the complainant appeals, and each party assigns error in this court. In the accounting the master states the entire accounts between appellant and appellee, charges the appellee with the net proceeds of the quarter section of land, and appellant with $500, half the amount of

a note to Charles C. Barrett, executed by William D. Cooper and appellant and paid by appellee. The court disallowed the credit of $500 allowed by the master to appellee on the Barrett note, and approved the finding of the master charging appellee with the amount received by him on the sale of the quarter section of land, which he sold for ten dollars an acre.

BUTTERS & ARMSTRONG, for appellant.

RAYMOND & NEWHALL, for appellee; SAMUEL ALS-CHULER, of counsel.

MR. PRESIDING JUSTICE GEORGE W. THOMPSON delivered the opinion of the court.

Appellant insists and assigns for error that there was error (1) in going behind the settlement of the parties of August, 1893, which was acted upon in December of the same year when the balance found due was paid, and (2) that the court should have charged appellee with the cash value of the quarter section of land at the time the bill was filed, which the proof tends to show was forty dollars per acre.

Appellee insists (1) that the order of re-reference was made by consent of the parties and that it was therein directed that the entire accounts of the parties should be re-stated, and (2) that the court erred in sustaining the exception of appellant to the allowance to appellee of $500 on the Barrett note and in not allowing the same with interest thereon.

The contention of appellee that the order of re-reference made at the time of the first hearing before the court was by consent, is based upon the following statement in the stenographer's report of what occurred in open court at the September term 1906: "And now the court after conference with counsel on both sides makes and enters the following order that is to say: This cause will be re-referred to James Shaw as special

master, to state the account between the parties and report the same to this court, without delay. The scope of the accounting will be this: It will be limited to the time of the sale of the 160 acres of land. Paul H. Cooper will be charged with the price of that land at the time of the sale. The accounting will embrace all transactions between Harry F. Cooper and Paul H. Cooper from the time of the conveyance of the real estate from Harry to Paul and from the time of the bill of sale of the store property," etc. The foregoing is contained in the certificate of evidence signed at the May term 1910 after the final disposition of the case.

The order of re-reference contained in the record was made at the September term, 1906, after a hearing upon evidence reported by the master and of evidence taken in open court. It recites only "the court after hearing the testimony of witnesses sworn and examined in open court orders that this cause be referred to James Shaw as special master for an accounting," and gives no directions whatever as to the scope of the accounting or what charge to make concerning the quarter section.

A certificate of evidence is part of the decree. Conductors Benefit Assn. v. Leonard, 166 Ill. 154; Bennett v. Bradford, 132 Ill. 269. The order of reference to the master to take the account was an interlocutory decree and subject to be modified or corrected if erroneous at any time. Jeffry v. Robbins, 167 Ill. 375.

The remarks of the judge in directing the order of reference appear to have been taken down by a stenographer, and are not a part of the record proper. They are not evidence and are not properly in the certificate of evidence, since the certificate was made four years later by another judge (Guyer v. D. R. I. & N. W. Ry. Co., 196 Ill. 370) and no time was given at the September term, 1906, within which to file a certificate; neither is there anything in the remarks made by the

court in directing the order of reference indicating that the reference was by consent of the parties. The reference was the decision of the court made upon the hearing without any agreement on the part of appellant. It was necessary that the matter be referred to the master to take the evidence and state the account as to what appellee should be charged with for the land and as to taxes on, and income, if any, from the quarter section of land subsequent to the time of the settlement in August, 1893. Moshier v. Norton, 83 Ill. 519; Garlick v. Mutual L. & B. Ass'n, 129 Ill. App. 406. This was necessary even if the parties could not go behind the settlement of their accounts had in 1893.

The sixth exception of appellant to the report of the master, which was overruled by the trial court, is that the master erred in not finding the fair market value of the quarter section of land, at the time the bill was filed, was forty dollars per acre, and that the defendant should account to complainant for its fair market value at that time. The first and sixth assignments of error of appellant in this court are that the court erred in overruling complainant's sixth exception to the master's report, and in not decreeing that the defendant should account for the full market value of the land at the time the bill was filed. Appellee insists that this contention of appellant is not properly before this court and that appellant, having neither made any motion to modify the order of reference, which he argues is composed of the signed order modified by the remarks of the judge, nor taken any exception thereto at the time, cannot now be heard to raise any question concerning it. When the master made his report on the reference to state the account, appellant filed objections to it insisting that appellant should be charged with the value of the land at the time the bill was filed with interest from that date. The master overruled the objections and they were ordered to stand as exceptions before the trial court,

so that appellant raised the contention in the trial court that is here insisted upon, and the question is not only properly presented for adjudication, but appellee had notice in the trial court of appellant's contention.

It may also be said "in answer to suggestions made by counsel for appellee * * * that since the entire proceedings in chancery causes are matters of record, and subject to review on appeal or error, it is not required by the rules of chancery practice that exceptions should be taken to the various decisions of the court made in the progress of such causes." Miller v. Whelan, 158 Ill. 544; Bird v. Bird, 218 Ill. 158; Smith v. Newland, 40 Ill. 100.

The record shows that on May 27, 1889, the appellant and his brother, William D. Cooper, who died in 1894, owned as tenants in common a half section of land in South Dakota, and appellant owned a quarter section in the same neighborhood; that appellee was security for appellant on a $2000 note held by the Aurora National Bank; that prior to 1888, William D. Cooper and appellant had been partners in the grocery business in Aurora, and on March 1, 1888, appellee bought out the interest of his brother William in the grocery; that one Barrett, the father-in-law of William D. Cooper, held a note for $1,000 executed by appellant and William D. Cooper which it is admitted was given for the indebtedness of William D. Cooper; and that in April, 1889, a judgment had been entered in Kane county against appellant and William D. Cooper, on the $1000 note. On May 27, 1889, appellant and William D. Cooper executed a deed to appellee on the half section of land in South Dakota to secure him for his liability on the note to the Aurora National Bank; and appellant also conveyed to appellee the quarter section of land, owned by him individually over which this controversy has arisen. On July 18, 1889, appellant by a bill of sale for the consideration of $3500 transferred

to appellee the grocery and stock and business, valued at about $2000 and also a note made by one Oliver Young to the brothers while partners in the grocery business. Appellee took possession of the grocery by placing his son in it and closed it out, although appellant remained in it and appears to have been the actual owner. Appellee paid the Barrett judgment May 29, 1889, and the note to the Aurora National Bank on July 18, 1889, the day the bill of sale was executed.

In February, 1893, appellee sold the half section of land for $3200 and in August of that year appellee and appellant had a settlement and an accounting in which it was agreed that after crediting appellant with one half the proceeds of the sale of the half section of land and one half the Young note, appellee owed appellant $601.05, on which he that day paid $100. On December 12, 1893, appellee wrote to appellant a letter enclosing a draft for $413.72 in setlement in full to that date, and making a statement of some minor errors claimed by him in the August settlement. This letter also refers to "an unsettled account, balance of Cooper Bros., due me of $320.33 which you saw on the old ledger when here when I bought out your and Wm's. interest when you moved to Aurora. There were some accounts put in the doubtful list; part of them I collected, but not enough to pay this balance." On January 29, 1896, appellee wrote to appellant suggesting that he, appellee, deed the quarter section of land to appellant's sister and daughter, and stating that there was $113.18 due to appellee. A week later he wrote another letter to the same effect, offering to make the deed. In January, 1899, appellee sold the quarter section of land without the knowledge of appellant for $10 an acre. Appellant did not learn of this sale until May, 1904, when he demanded a reconveyance of the land, or an accounting for its market value.

The letters and statements made by appellee show

that in August and December, 1893, after the sale of the half section of land, there was a full and complete accounting as to all indebtedness between appellant and appellee, and that all the indebtedness of appellant to appellee had been paid by half of the proceeds of the half section and from other moneys, leaving $600 in the hands of appellee belonging to appellant, and leaving the title to the quarter section conveyed by appellant to appellee as security for the debts which had been paid, still in the appellee. It also shows that at that time appellee made a statement to his brother William, which included $1200 paid by appellee on the Barrett note. It would be very difficult, after the lapse of so many years, to know all that was said and done in these settlements which included the settlements for the proceeds of the half section of land, the sale of the grocery store, the sale of a safe and jewelry to appellee by William and of the accounts between William and appellee. The statement of the account between appellee and William was made out by appellee and sent to William, and William's interest was looked after by appellant for the reason that in September, 1893, he had been taken to an asylum by appellee, where he died in 1894. Appellee in his testimony states: "there was a balance due to Harry and to William on that sale," —the sale of the half section. In a letter written by appellee in July 1904, to appellant he states: "In regard to your writing about a settlement, we had that some time since both for your one half interest and for William's one half * * * and his account I considered settled under the circumstances." The statements made out by appellant do not prove that other items may not have been presented and withdrawn or adjusted in some other way by the parties. There is no evidence of any fraud in the settlement or that anything was forgotten or any mistake made in it. Appellee must in the absence of proof of fraud or mistake be held bound by his letter and draft sent in December,

1893, which he states is "to settle up in full." We hold that appellant and appellee in the absence of fraud or mistake are both estopped by the settlement of these accounts made in 1893. The statement of the account between the parties to this suit should have been confined to matters subsequent to the settlement in December, 1893. Bull, Admr., v. Harris, 31 Ill. 487; Straubhler v. Mohler, 80 Ill. 21.

From the letters of appellee, it is clear that after the settlement of their accounts in 1893, and the payment to him as mortgagee of all the debts the deeds were made to secure, appellee held the title to the quarter section of land in trust for appellant. 3 Pomeroy's Eq. Juris., sec. 1218. He sold it in 1899, and concealed the sale from appellant, the real owner. When appellant discovered that the land had been sold and demanded a settlement and an accounting from appellee the appellee denied the trust relation and resisted an accounting, until his letters were produced, which proved that the title was conveyed to him by way of mortgage, and that the indebtedness secured had been fully paid many years before. When it was clearly made to appear that the equities are with appellant, then appellee seeks to restate the account covering all the transactions, and then for the first time apparently makes charges for commissions for selling the half section, the grocery store and the quarter section.

Appellee insists that he sold the quarter section of land in controversy with the consent of appellant, and hence he is only chargeable with what he received, and not with the value of the land at the time appellant discovered the land had been sold and filed his bill for a re-conveyance. Appellee bases his contention that appellant consented that he might sell the land, on the letter written by appellee to appellant in January 1896. The letter is:

"Mendota, Jan'y 29, '96. Dear Harry: Your letter

of yesterday to hand. I write this from the house as I have an attack of grip. I will keep that land in my name as it is until I can sell it; when sold I will divide it equally between Darline and Mary. It is safer in my hands. I will not be mortgaging it, and if sold now would hate to sacrifice on it. I will sell it first good opportunity. The other land I sold on time and will be two years yet before it is paid * * * Resp'y,

P. H. Cooper.''

Appellee insisted that the deed from appellant conveying the land was a deed absolute and not a mortgage. In the original answer appellee denied that appellant had any interest whatever in the land and also pleaded the Statute of Frauds and Perjuries. Later he filed a plea of the Statute of Limitations. The letter was pleaded and offered in evidence to show that by the statement of appellee the deed was only a mortgage. The appellee although a witness several times in his own behalf did not testify that he had permission or authority to sell the land after the indebtedness to him had been paid and does not produce any reply of appellant to the letter, although all communications between the parties at that time were by correspondence. In a second letter written February 4, 1896, appellee again wrote to appellant ''I have concluded to deed that quarter section in Dakota, and you can decide among yourselves how you want it deeded. I thought it best to deed it to Mary and Darline. You have not yet got squared up with your creditors, have you; if not they are liable to seize the land and you will not realize anything from it. L have a claim of $113.18 which must be paid before I deed it. Of course my claim would be very much larger, if I was presenting same to Nellie to pay. On payment of the above sum I am ready to make out deed.'' In a third letter dated February 6, 1896, he again writes * * * ''I want all this jangling stopped. The $113.18 due me cannot be reduced, when that amount is sent me I will make out the deed.'' Appellant as a witness in his own be-

half testified that he "never authorized Paul to incur any expense on account of this 160 acres or to sell it." Yet he does not say what reply he made to any of these letters. The evidence shows that appellant paid the taxes on this land after the settlement of 1893, and in fact from the time it was deeded to appellant in May 1889. The land was raw and unproductive. The evidence fails to show that appellant paid any attention to the land or made any inquiry about it from February, 1896, until 1904, although he knew appellee was paying taxes on it and that there was something due appellee in 1896, for taxes paid by him. Appellant manifested no care and took no responsibility concerning this land from 1889 to 1904. Appellee took all that care and responsibility. Appellee was willing to deed the land in 1896, to whoever appellant should direct, but appellant, for some reason not disclosed by the record does not appear to have desired it to be deeded back to himself at that time. When in 1896 appellee wrote appellant that he should sell it at the first good opportunity appellant does not show that he objected to his doing so. When appellee was offered in 1899 all it was worth, that was a good opportunity to sell. It may be, as intimated in the petition of appellee for a rehearing, that all these conveyances were simply a scheme to delay creditors and that suggestion may account for there being no reply shown to the question of appellee in his letter of February 4, 1896, to appellant: "You have not yet got squared with your creditors, have you?" The appellee has not pleaded, however, that the original conveyance to him was fraudulent for the purpose of delaying creditors, so that the effect of such a conveyance is not before us.

Appellant having paid no attention to the demand that what was due appellee should be paid, and to the request that he should direct who the land should be deeded to, may not now equitably demand of appellee more than the reasonable value of the land at the time

it was sold with legal interest on the balance due him at that time. By his silence he would appear to have consented that the holder of the title should sell it. The land was sold for all it was worth at the time of the sale. Appellee sold it in compliance with his notice to appellant that he would sell it at the first good opportunity. There is no bad faith shown in the making of the sale of the land. It was a fraud on the part of appellee to subsequently convert the proceeds to his own use and not to have disclosed the sale to appellant at the time, but this fraud will not relate back to the sale and make that fraudulent and appellee chargeable with the subsequent increase in value of the land, without some proof of fraudulent intention at the time of making the sale. Appellant has no equitable cause of complaint under the circumstances in this case when he receives the amount for which the land was sold with interest.

Appellee assigns a cross error that the court should have allowed appellee credit on account of the quarter section for the sum paid by him on the Barrett note or judgment. It is evident from the statement made to William by appellee on August 1, 1893, and from the letter written by appellee to appellant in July, 1904, in which he states "his account (William's) I considered settled under the circumstances," that that matter was settled with William at the time the half section was sold. Appellee also stated in his evidence before the master that there was a balance due William at the time of the sale of the half section. There was no error in the court sustaining the exception of appellant to the allowance of anything on account of the Barrett note or judgment.

The decree of the circuit court is reversed and the cause remanded to the circuit court with instructions to cause the account to be restated from the time of the settlement in December, 1893, and to enter a decree against the appellee charging him with the amount

received from the sale of the quarter section of land, and from its use after December, 1893, less any credits appellee may be entitled to, if any, for taxes or other matters since December 12, 1893, not including, however, any commission for making the sale, with legal interest on the balance due appellant from the date of the sale.

*Reversed and remanded with directions.*