## JOHN R. SAPP *et al.*

*v.*

### E. STRONG PHELPS *et al.*

1. EVIDENCE—*to show mistake in written contract.* The evidence to show a mistake in a written contract and justify its correction must be clear, strong and satisfactory.

2. CONTRACT—*construed as to who shall pay for land for a street.* Where an agreement is made between A of the one part and B and C of the other, that A is to buy at public sale a tract of land lying west of the premises owned by him, and that B and C are to extend a street north and south through such tract at their exclusive expense, and that A is to retain all of the tract west of his premises to such street, and B and C to take the balance, each paying in proportion to his or their part thereof, A will not be required to pay for any part of the land covered by the extension of the street, but only for the land retained by him to the street.

3. Costs—*discretionary in chancery.* In chancery it is discretionary with the court as to who shall pay the costs, and a party uniting as complainant and being willing to execute a contract as really made, and as insisted by his co-complainants, is properly exempted from the payment of costs.

4. Party—*in chancery.* The fact that a necessary party to a bill in chancery is made a complainant when he might properly have been made a defendant, presents no obstacle to a proper adjudication of the rights of the parties.

5. Chancery—*bill*—*whether multifarious.* Where, at a sale of land, A, under a contract with B and C, purchases the same for himself, and also as the agent for B and C, each to take distinct parts thereof, in which contract there is a mistake in drafting the same, a bill by the vendors to specifically enforce the contract of sale, and to reform the mistake in the contract made between the purchaser and those interested with him in the purchase, is not subject to the objection of being multifarious. In such a case the subject of both contracts and the parties thereto are not improperly embraced in one bill.

Appeal from the Appellate Court of the Second District; the Hon. Nathaniel J. Pillsbury, presiding Justice, and Hon. Joseph Sibley and Hon. E. S. Leland, Justices.

Messrs. Gibbons & Stipp, for the appellants.

Messrs. Farwell & Warren, and Messrs. Eckels & Kyle, for the appellees.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a bill in chancery, filed by the complainants, Phelps, Fisher, Farwell, Garvin, Smith and White, against the defendants, Sapp and Wilcox, for the reformation and specific performance of a contract for the sale of real estate.

The bill alleges that the complainants, except Phelps, on and before August 1, 1876, were the owners in fee of what was called the E. M. Fisher property, consisting of a portion of lot 6, ten feet wide north and south, and 142 feet long east and west, in the north-east corner thereof, and lots 7 and 8 except a strip 356 feet long and 130 feet wide off the east side of lot 8, in the town of Princeton; that said owners had agreed to sell said property at public auction for not less than $4000, on certain specified terms; that August 1, 1876, the property

was so offered for sale and struck off to Phelps for $4000; that before the sale took place an agreement in writing was entered into between Phelps, of the one part, and Sapp and Wilcox, of the other part, as follows:

"That the said Phelps is to bid off in his own name at the auction to be held this day, the undisposed portions of lots 7 and 8 of the E. M. Fisher property in Princeton, Illinois, at the sum of $4000; if he can not procure said property at that price, he shall not be required to purchase the same. Of the said property said Phelps is to retain that portion of lot 8 which lies west of the three lots now owned by said Phelps and the extension of Randolph street, which is to be extended through lots 7 and 8 by said Sapp and Wilcox. Said E. S. Phelps has also the privilege to retain that portion of lot 7 which lies south of the premises now to be retained by him as aforesaid to the extension of Marion street, which extension said Sapp and Wilcox are to make. For all that portion of said lots 7 and 8 that shall not be retained by said Phelps as aforesaid, said Sapp and Wilcox are to take of said Phelps and pay him therefor proportionately as he shall pay for the aforesaid lots 7 and 8. That is, they pay Phelps the same price that he has to pay for the portion or portions not so retained by him. They are to make the same payments that said Phelps is required to make, pay the one-third cash down to the owners of said lots and give their notes for the other two-thirds as required by the terms of the sale, so that said Phelps shall be liable only for the portion that may be so retained by him; and as to the remainder of said premises not so retained by him, said Sapp and Wilcox assume all the obligations required therefor. The said extensions of Randolph and Marion streets are to be surveyed and laid out at the exclusive expense of said Sapp and Wilcox, so that said Phelps obtains the advantage of said extensions without expense to him. Immediately upon said Phelps receiving the deed for said lots 7 and 8, he is to execute to said Sapp and Wilcox a proper quitclaim to the portion thereof that shall not be re-

tained by him, upon their paying and assuming to pay as aforesaid."

The following plat shows the situation of the property prior to the sale:

The bill avers that the portion of lot 8 which Phelps is bound by the agreement to take, is that portion that lies west of the three lots owned by him at the time of making the agreement, and east of the extension south of Randolph street, and that if the agreement fails to show that such was the only portion of lot 8 which he is bound to take and retain, then

592      SAPP *et al. v.* PHELPS *et al.*      [Sept. T.

Opinion of the Court.

there was a mistake made in drafting the contract which ought to be corrected. The bill also alleges that said portion of lot 6 was omitted by mistake in said agreement between Phelps, and Sapp and Wilcox.

The circuit court decreed that Phelps and defendants, Sapp and Wilcox, specifically perform the contract of purchase as in the decree provided; and that the agreement between Phelps and Sapp and Wilcox be reformed by including therein that portion of lot 6 before described and by mistake omitted; and also by the insertion of the word " to " in that clause descriptive of the part of the premises which Phelps was to take, so that the same should read as follows, to-wit, " of the said property said Phelps is to retain that portion of lot 8 which lies west of the three lots now owned by said Phelps and *to* the extension of Randolph street."

The defendants by writ of error took the case to the Appellate Court for the Second District, where the decree was affirmed, and defendants then appealed to this Court.

The main point which is made against the decree of the circuit court is in decreeing reformation of the contract between Phelps and Sapp and Wilcox so as not to compel Phelps to accept and pay for the whole of lot 8, lying west of the three lots therein he before owned.

The whole quantity of land of this E. M. Fisher property was $7\frac{75}{100}$ acres, the price was $4000, a little over $500 per acre; the quantity to be retained by Phelps under the decree is $\frac{99}{100}$ of an acre.

It is insisted that there is not in this case the strong and convincing evidence which is required in order to the correction of a mistake of fact in a written agreement. It appears that at the time of the agreement Phelps was the owner of three lots in lot 8 on its east side. His testimony is, that about 12 o'clock on the day of sale, Sapp and Wilcox came to his store and wanted him to bid off the property for them; that as an inducement they told him he could have that part back of his lots, and they would lay out the two streets to it;

that he agreed to take that part of lot 8 west of his lots and to Randolph street extension; that he made a plat showing the extension of the streets, the part he was to take and the part he was to have the option of taking; that they went to Mr. Peters to have the contract drawn up in writing; that he took said plat with him and explained to Mr. Peters by that the part he was to take, and that Mr. Peters from that plat in his hand dictated the contract to Mr. Kyle, who wrote it down. Mr. Peters testifies that the parties came to him with a plat of the premises which they had prepared, and explained to him by the plat what Phelps was to take, and that he dictated the agreement from the plat. He is clear and positive that Phelps was only to take to Randolph street as extended; that the word *to* is left out of the contract when it ought to be in there. Wilcox is positive in his testimony that Phelps was to take all of lot 8 west of his lots. Sapp says that he did not know just how the property was located, or just what part of it Phelps was to take, but that he figured as to the quantity each of them was to take, and he found he would have to pay just about $200 in addition to his share of the property— whereas, according to the portion which Phelps is made to take under the decree, Sapp would have about $1000 to pay.

Mr. Kyle testifies that he knew nothing of the contract as made by the parties, that he wrote it down just as he understood Mr. Peters to dictate it, and that he should say without any hesitancy that the contract was written just as it was dictated; that he says so because it was their universal custom to have contracts read over, and he thinks this one was read over.

Thus stands the case upon the testimony of witnesses as to what the contract was.

Sapp and Wilcox insist the agreement was that Phelps should take all of lot 8 west of his three lots, and that that agreement is expressed by the language of the written contract that Phelps "is to retain that portion of lot 8 which lies west of the three lots now owned by said Phelps and the extension of Randolph street, which is to be extended through

38—92 ILL.

lots 7 and 8 by said Sapp and Wilcox." Phelps claims that
he was to retain only that portion of lot 8 which lies west
of the three lots owned by him *to* the extension of Randolph
street.

The plat spoken of by Phelps as having been made by him
at the time, showing the extension of the streets, and the part
he was to take, and the part he was to have the option of
taking, is preserved in the record. This plat shows the ex-
tensions of Randolph and Marion streets south and west until
they intersect and no further—nothing is platted beyond the
streets as they were to be extended,—it thus showing that
Phelps was only to take that part of lot 8 which lies west of
his three lots *to* the extension south of Randolph street. If
he was to take all of lot 8 as contended, the plat should have
included all of lot 8, instead of including, as it does, nothing
west of Randolph street.

If the contract had been as Sapp and Wilcox contend,
it would naturally have been written that Phelps was to
retain that portion of lot 8 which lies west of his three lots
simply, without the useless matter of description as to the ex-
tension of Randolph street. And again, if it had been as thus
contended, the expression in the fourth clause of the contract,
"For all that portion of said lots seven and eight that shall
not be retained by said Phelps as aforesaid, said Sapp and
Wilcox are to take of said Phelps" etc., would not have been
used.

If it was intended that Phelps should take all of lot 8 west
of his three lots in it, lot 7 alone would have been men-
tioned in that clause, and lot 8 wholly omitted therefrom.
There would be nothing of lot 8 for Sapp and Wilcox to take
of Phelps.

Agreeing with appellant as to the character of the evidence
which is required to show a mistake in a written contract and
justify its correction, that it must be very clear, strong and
satisfactory, we are of opinion that the proof in the present
case sufficiently meets the requirement and warranted the cir-

cuit court in finding that the contract was, that Phelps was to take only that portion of lot 8 lying between his three lots and Randolph street extended, and decreeing accordingly.

It is insisted by appellants, that at least the decree should be modified in the respect that it requires Sapp and Wilcox to pay for the land taken for the extension of Randolph street, and to pay the costs.

The contract being found to be that Phelps was to take only that portion of lot 8 extending west to Randolph street extended, and it reading that Sapp and Wilcox are to take and pay for the remainder, and that Randolph street was to be extended through lot 8 by Sapp and Wilcox, and that the extensions of the streets were to be surveyed and laid out at their exclusive expense, so that Phelps should obtain the advantage of said extensions without expense to him, we do not see that Phelps was required to pay for any of the land covered by the extensions of the street.

The statements of Sapp and Wilcox that they understood that each was to give their own land where the streets ran, they to give it where the street ran on them, and Phelps where it ran on him, are not sufficient to vary the written contract in this respect.

The costs were discretionary with the court, and we think they were properly decreed.

A further point is made that the bill is multifarious in embracing two separate contracts,—the contract of purchase between the owners of the property and Phelps, and the contract between Phelps and Sapp and Wilcox as to the bidding off the property in Phelps' name, and in uniting in one suit the different parties to these contracts. It may be that Phelps more properly might have been made defendant, but he was a necessary party, and being made a party in the case, whether complainant or defendant, is no obstacle in equity to the adjudication of the rights of the parties.

The theory of the case, and upon which the decree proceeds, is, that Phelps, under the contract, bought the property acting

for himself and also as the agent of Sapp and Wilcox, and the decree is accordingly several against each one of the three, requiring him to specifically perform the contract of purchase as to each parcel of the land he was to take. The proofs warranted such a decree. And in such case we think the subjects of both contracts and the parties thereto were not improperly embraced in one bill. It was convenient in settling the whole matter of controversy between all the parties in a single suit. Phelps being willing to perform on his part according to his agreement with Sapp and Wilcox, and to join as complainant to enforce performance, should not be subject to any portion of the costs, as he might have been if made defendant.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*