# W. G. Threewit et al., Plaintiffs in Error, v. W. W. McFall et al., Defendants in Error.

1. MORTGAGES, § 23*—*when deed and agreement to recovery constitute single transaction.* In a bill to set aside a deed of real estate absolute on its face and praying to have the same declared a mortgage, and to be allowed to redeem therefrom, where it appeared that an agreement between grantor and grantee was made and recorded at the same time as the deed, whereby grantee agreed to reconvey to grantors the premises conveyed in the deed, free and clear of all incumbrances, on the payment by grantors within two years of certain indebtedness named in such agreement, and already existing, *held* that the deed and agreement constituted a single transaction.

2. MORTGAGES, § 23*—*when evidence sufficient to show deed intended to secure indebtedness.* In a bill to set aside a deed of real estate absolute on its face and praying to have the same declared a mortgage, and to be allowed to redeem therefrom, where it appeared that an agreement between grantors and grantee was made and recorded at the same time as the deed, whereby grantee agreed to reconvey to grantors the premises conveyed in the deed, free and clear of all incumbrances, on the payment by grantors within two years of certain indebtedness named in such agreement and already existing, evidence *held* to show that the deed was intended to secure the payment of the indebtedness, and not as an absolute conveyance, effectual at once, for a consideration already paid.

3. MORTGAGES, § 23*—*when agreement to reconvey does not make transaction mortgage.* Where a deed absolute in form is made and accepted as in payment of an antecedent debt and not as security for the repayment of money, an agreement to reconvey in a certain time and for a certain sum does not of itself make the transaction a mortgage.

4. MORTGAGES, § 23*—*when deed and agreement to reconvey constitute mortgage.* In a bill to redeem, a deed absolute on its face coupled with an agreement to reconvey within two years on payment of certain indebtedness *held* plainly a mortgage within the meaning of Hurd's Rev. St., ch. 95, sec. 12 (J. & A. ¶ 7587), providing that "every deed conveying real estate which shall have been intended only as a security in the nature of a mortgage, though it be by an absolute conveyance in terms, shall be considered

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

as a mortgage," it appearing that such deed was intended as security for the payment of such antecedent indebtedness.

5. JUDGMENT, § 573*—*when bill may be maintained to enforce against real estate.* The holder of a judgment may within seven years of its rendition maintain a bill in equity to enforce it against the real estate of the debtor situated within the county where the judgment was rendered, notwithstanding the conveyance of the real estate to another, the judgment being a lien on the real estate and being notice to the world of complainant's claim.

6. MORTGAGES, § 28*—*when rights of grantor and those claiming under him not cut off by refusal of grantee to reconvey.* Where a deed absolute on its face conveys real estate under an agreement made and recorded at the same time as the deed, whereby grantee agrees to reconvey within two years on the performance of certain conditions, the rights of grantors and those claiming under them to redeem are not cut off by a conveyance by grantee to one other than the grantor, where it appears that within such period of redemption grantor or those claiming under him were ready to perform, but grantee refused to accept performance or to reconvey.

7. MORTGAGES, § 28*—*when subsequent grantees of land under deed not innocent parties in interest.* In a bill to redeem real estate from a deed absolute on its face but coupled with an agreement to reconvey within a named time, the whole transaction constituting a mortgage, where complainants were a judgment creditor of such mortgagors, and a grantee of the equity of redemption under such mortgage, and where some of the defendants were subsequent grantees claiming under the grantee named in the deed from which the redemption is sought, none of such defendants are to be deemed innocent parties in interest where all sources of complainants' title are matters of record.

8. EQUITY, § 146*—*when bill to redeem from mortgage not multifarious.* A bill to redeem real estate from a deed and agreement to convey constituting a mortgage is not demurrable as being multifarious because one of the complainants joined is an execution creditor of such mortgagor, and the other a grantee of the equity of redemption, although the interests of the complainants are to some extent conflicting, and although one might properly have been joined as a defendant, since both are necessary parties to the bill, and neither can maintain the bill except by overcoming the claims of the defendants to the property sought to be redeemed, to which extent their interests are identical.

9. EQUITY, § 106*—*when rights of complainants having conflicting interests may be determined.* Where two parties, whose rights are to some extent conflicting, are joined in a bill as complainants,

if it be determined that either has a right to equitable relief as against the defendants, the rights of complainants can readily be determined under the bill.

10. EQUITY, § 106*—*who are proper parties complainant.* Where two complainants in a bill are necessary parties thereto, the fact that one of them might properly have been joined as a defendant is no obstacle in equity to the adjustment of the rights of all parties, including the complainants.

Error to the Circuit Court of Franklin county; the Hon. WILLIAM H. GREEN, Judge, presiding. Heard in this court at the March term, 1915. Reversed and remanded with directions. Opinion filed December 1, 1915.

T. I. GALLOWAY and R. E. SMITH, for plaintiffs in error.

SPILLER & MILLER, W. F. DILLON and W. P. SEEBER, for defendants in error.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Plaintiffs in error filed a bill in equity against defendants in error, asking the correction of the description in several deeds, and that one certain deed and contract be declared a mortgage, that an accounting be had and that plaintiffs in error be permitted to redeem. A general and special demurrer was sustained to the bill. Plaintiffs in error abided their bill, the same was dismissed for want of equity and judgment was entered against complainants for costs. According to the allegations of the bill, W. W. McFall on or about February 4, 1907, sold and conveyed to Offa Neal for a consideration of $300, Lot 19, Block D, in McFall's third addition to the City of Benton, Illinois. Neal recorded his deed, entered into possession and improved the lot. On September 13, 1909, W. G. Threewit recovered a judgment against Neal and his wife for $209.71. At the same time Neal and his wife

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

·owed B. P. Flatt, guardian, $825 as evidenced by their notes dated February 4, 1907, and they also owed the Coal Belt National Bank of Benton $255.72, as evidenced by their note dated February 18, 1908, and $304, shown by their note dated March 30, 1908. To secure the payment of said sums and the interest due thereon, on or before two years from April 1, 1910, said Neal and wife, by a deed absolute on its face, conveyed said lot to E. W. Hersh, trustee for said bank, but it is alleged that said deed was intended by the parties thereto as a mortgage only and that upon the payment of said indebtedness and the interest due thereon, said Hersh agreed to reconvey said premises to said Neal and wife clear of all incumbrances made by him as evidenced by his agreement in writing of that date. The deed to said trustee and his agreement to reconvey were both filed for record on March 12, 1910, and duly recorded and copies of the same were filed with and made a part of complainants' bill. The trustee took possession of said premises under said deed and collected rents thereon up to May 17, 1911, amounting to $175. Prior to said last mentioned date Neal and wife paid all of said indebtedness, except $825, when the trustee refused to receive further payment. It is further alleged that Neal and his wife and complainants have at all times since May 17, 1911, and are now ready to pay said trustee and the defendants, whatever, if anything, is due them for the principal sums or interest due on said indebtedness, but that said trustee and the other defendants have already refused and still do refuse to accept the same, and refuse to reconvey said premises and claim that said sums of money were paid to said Neal and wife as absolute purchase money for said premises; that said deed was not intended as a mortgage but as an absolute conveyance, and they refused to make an accounting with the complainants concerning the transaction; that on May 10, 1911, said Hersh, trustee, and said McFall labored

under a mutual mistake that the lot intended to be conveyed was Lot 17 instead of Lot 19, and to correct such supposed error said trustee conveyed Lot 19 to McFall and McFall deeded Lot 17 to said trustee, but that in fact the proper number of the lot was 19; that on May 17, 1911, said trustee sold said premises for $1,010 to Walter Waggoner and conveyed the same to him as Lot 17 instead of 19. Waggoner, as the bill states, took possession of said Lot 19, however, and collected rents thereon from May 17, 1911, to November 17, 1913, aggregating $375. On January 20, 1913, Hannah Zwengle purchased said lot from Neal and wife for $75 and received their quitclaim deed to said Lot 17, which was afterwards corrected by another deed properly describing said property, the last deed having been made after the original bill was filed. On March 14, 1913, Threewit sued out an execution on his judgment and a levy was made and sale had, he being the purchaser. In the certificate of levy, certificate of sale and sheriff's deed, the latter of which was made on July 20, 1914, the property was inadvertently described as Lot 17. On November 17, 1913, Waggoner sold the property to W. W. McFall for $1,000, making a quitclaim deed therefor and describing the premises as Lot 17. McFall, however, took possession of Lot No. 19 under the deed and retained the same until June 20, 1914, collecting during said time rents amounting to $105. On June 15, 1914, McFall sold the lot to Fannie H. Newman making a warranty deed of that date, conveying to her said premises by proper description, and she took possession of the same collecting rents therefor, aggregating $75.

The prayer of the bill is that said instruments wherein said lot is described as No. 17 be corrected to show the proper description; that said deed from Neal and wife to Hersh, as trustee, be decreed to be a mortgage only and complainants be allowed to redeem therefrom on such terms as may be just; that the deed from Hersh, trustee, to McFall dated May 13, 1911,

and the deed from McFall to Hersh, trustee, due May 10, 1911, be declared null and void; that the judgment in favor of Threewit against Neal and wife be decreed to be the first and prior lien on the premises; that an account of said transactions be taken under the direction of the court and that upon the payment of what may be found due, defendants be decreed to surrender up possession of the property and to convey the same to them by good and sufficient conveyances. The defendants named in the bill are W. W. McFall, Walter Waggoner, E. W. Hersh, trustee, and Fannie H. Newman.

The contract made between Neal and wife and Hersh, made and recorded at the same time as the deed from Neal and wife to Hersh as trustee, for the Coal Belt National Bank of Benton, Illinois, which was made a part of the bill, contained an agreement on the part of Hersh as trustee to reconvey said premises free and clear of all incumbrances by said trustee, upon the payment on or before two years by Neal and his wife of their indebtedness to said bank and said Flatt, guardian, as evidenced by their promissory notes above referred to. The special grounds of demurrer relied on are, first, that it appears from the bill the deed under which complainants claim title to the premises was not executed until since the commencement of this suit; second, that it appears from the contract upon which complainants base their right to redeem that complainants are barred from asserting any rights to said premises; third, that the bill discloses that the premises are now owned by an innocent third party, who has purchased the same for value without notice of the rights of complainants. It is assigned as error by appellants that the court erred in sustaining the demurrer to complainants' bill and in dismissing the bill and rendering judgment against complainants for costs.

The deed from Neal and wife to Hersh as trustee, and the agreement of the latter to reconvey upon the

payment of certain indebtedness, constituted but one transaction, and it appears to us evident that the deed was made to secure the repayment of the money on or before the expiration of two years, and that it was not intended as an absolute conveyance to take effect at once for a consideration already paid. It is true that where a deed that is absolute in form is made and accepted as paying an antecedent debt and not as security for the repayment of the same, an agreement to reconvey in a certain time and for a certain sum does not of itself stamp the transaction as a mortgage. Devlin on Deeds, sec. 1115; *Pitts v. Cable*, 44 Ill. 103. But the deed and contract plainly bring this transaction within that provision of the statute which provides that "every deed conveying real estate which shall have been intended only as a security in the nature of a mortgage, though it be by an absolute conveyance in terms, shall be considered as a mortgage." Rev. St., chap. 95, sec. 12 (J. & A. ¶ 7587).

The facts in the case as stated in the bill, however, show conditions sustaining the right to equitable relief, even if the deed and contract referred to do not together constitute a mortgage on the premises, because the judgment against Neal and wife in favor of Threewit of September 13, 1909, was a lien on the premises in question and notice to the world. The premises under the agreement of Hersh were to be reconveyed if payment of the debt should be made within two years. Within two years the trustee conveyed the premises to Waggoner, who afterwards conveyed the same to McFall and he to Newman, and before the expiration of the time agreed on it appears from the bill that the proper parties were ready to pay the debt to the trustee and he refused to receive it. The conveyance of the property under these circumstances certainly would not cut off the right to redeem possessed by the Neals or those claiming under them. None of the parties defendant can be held to be innocent parties

in interest, for the reason that not only the judgment but also the other instruments in writing relied upon by complainants were all matters of record and showed fully the condition of the title to the premises. A point most strongly insisted upon by defendants in error in support of their demurrer to the bill, and to sustain the ruling of the court thereon, is that the bill is multifarious for the reason that the rights of the two plaintiffs in error are inconsistent. There are two parties complainant, one of them, the said W. G. Threewit, claims title to the premises in question by reason of a sheriff's sale to him made under a judgment in his favor against Neal and wife. The other complainant, the said Hannah Zwengle, claims title through the purchase from the Neals of their equity of redemption and the deed conveying the same from them to her. It is true that the interests of the two complainants are to a large extent conflicting, although it is possible that Threewit may have some rights therein, with which the interests of Zwengle would not conflict, and it is also true that either one of these complainants might properly have been made a defendant. Both complainants, however, are necessary parties to the suit, and before either one of them can succeed in establishing his or her rights they must overcome the claims of the defendants to the premises, and to that extent their interests are identical. The first thing to be determined is, whether or not either one of the complainants have a right to equitable relief as against the defendants and, should that question be determined in the affirmative, the rights of the two complainants. can readily be adjusted under this bill. Being necessary parties, the fact that one of them might properly have been made a defendant is no obstacle in equity to the adjustment of the rights of all the parties including the two complainants. *Sapp v. Phelps*, 92 Ill. 588.

The order dismissing the bill for want of equity, and entering judgment against complainants for costs, will

be reversed and the cause remanded with directions to the court below to overrule the demurrer to the bill of complaint, in order that such further proceedings may be had as equity may require.

*Reversed and remanded with directions.*